UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

DERRICK LEE SMITH,

          Plaintiff,                      Case No. 1:22-cv-1028

v.                                            Honorable Paul L. Maloney

MARY OTTO et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred while Plaintiff was housed at that facility and the Muskegon Correctional

Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues Mary Otto, a person he describes as the Probable Cause Conference Director of the Wayne County Circuit Court, the MDOC, the MDOC Office of Legal Affairs, the MDOC Administration, MDOC Director Heidi Washington, MDOC Legal Affairs Division employee Norma Killough, and MDOC Administrative Assistant Kevin Towns.

Plaintiff alleges that Defendants, beginning in January of 2022, and continuing to the date Plaintiff filed his complaint, have conspired to prevent him from sending inmate-to-inmate correspondence with his "co-plaintiffs" and witnesses in several lawsuits he has filed in the state and federal courts. Plaintiff alleges that Defendants have taken these actions in retaliation for his participation in conduct protected by the First Amendment. Plaintiff contends that Defendants' actions violate Plaintiff's First, Eighth, and Fourteenth Amendment rights.

The issue of inmate-to-inmate correspondence is addressed in MDOC Director's Office Memorandum (DOM) 2022-2, which provides:

> Beginning December 1, 2009, prisoners were prohibited from sending correspondence through the mail to another prisoner except for prisoners who were verified to be immediate family members and for verified legal correspondence. An immediate family member is defined as being a spouse, parent, stepparent, grandparent, mother-in-law, father-in-law, child, step-child, grandchild, sibling, step-sibling, or half-sibling. Legal correspondence is allowed between prisoners who are not represented by legal counsel who:
>
> 1. Were charged for a criminal offense in which both prisoners were involved if the prisoner requesting to correspond currently has an appeal of their conviction for that offense pending in a State or Federal court.
>
> 2. Are co-plaintiffs in a verified pending civil case, including during the appeal period. Once the appeal is filed, however, only co-appellants in the pending appeal may correspond. Plaintiffs in a verified pending civil case filed with the court also may correspond with witnesses in that case, but not during the appellate phase. They also may not correspond in cases that are decided based upon the record (e.g., Petition for Judicial Review) or that have not yet been served on any defendant.

2

> 3. Are co-defendants in a child custody case involving termination of parental rights, including during the appeal period. Once the appeal is filed, however, the prisoners may correspond only if both are appellants in the case.
>
> In addition to the above, correspondence between prisoners is allowed when one of the prisoners is verified as having acted in the same relationship as an immediate family member to the other prisoner prior to incarceration (e.g., an aunt or uncle who served as a surrogate parent). The burden of providing verification is on the prisoner and may be approved only by the Deputy Director of Correctional Facilities Administration (CFA).

MDOC DOM 2022-2 (eff. Jan. 1, 2022).[1] The DOM requires prisoners to apply on a form. If the prisoner's eligibility is verified, the approval is entered into a database that is accessible to mailroom staff. If eligibility is not verified, the request is denied.

Plaintiff claims that Defendants have used the policy to deny him the opportunity to correspond with other inmates who Plaintiff claims are either co-plaintiffs or witnesses in a list of cases:

1. Smith v. Probable Cause Conference Director et al., No. 2022-000019-CZ (St. Clair Cnty. Cir. Ct);
2. Smith v. MDOC et al., No. 2022-000815-CK (Macomb Cnty. Cir. Ct.);
3. Smith v. MDOC et al., No. 2022-000951-AH (Wayne Cnty. Cir. Ct.);
4. Smith v. JPAY, LLC et al., No. 2:22-cv-10340 (E.D. Mich.);
5. Smith v. Schiebner et al., No. 22-1066 (6th Cir.);
6. Smith v. MDOC et al., No. 22-1657 (6th Cir.);
7. Smith v. MDOC et al., No. 2022-000138-MC (Mich. Ct. Claims);
8. Smith v. MDOC et al., No. 2022-211770982-GC (Musk. Cnty Dist. Ct.);
9. Smith v. MDOC et al., No. 1:22-cv-149 (W.D. Mich.);
10. Smith et al. v. Brock et al., No. 1:22-cv-634 (W.D. Mich.); and
11. Smith v. Burk et al., No. 1:19-cv-1018 (W.D. Mich.).

(Compl., ECF No. 1, PageID.8–9.)

---

[1] The DOM has since been superseded by MDOC DOM 2023-2, effective January 1, 2023. The language quoted above also appears in the superseding DOM. MDOC DOM 2023-2 (eff. Jan. 1, 2023), https://www.michigan.gov/corrections/-/media/Project/Websites/corrections/Files/Directors-Office-Memoranda/DOMS-2023/DOM-2023-2-P2P-Mail-Final.pdf?rev=408678b2d3f94cc2a846018fba54906e (last visited Feb. 13, 2023).

In the St. Clair County case, Plaintiff did not have any co-plaintiffs. Plaintiff purported to bring the action on behalf of a class comprised of all prisoners in the MDOC. Class certification was never granted. That aspect of the case was transferred to Wayne County Circuit Court. Plaintiff does not include the case as transferred to Wayne County on his list.

Plaintiff does include one Wayne County case, however: a state habeas petition under Case No. 2022-000951-AH. At least that is the number Plaintiff provides sometimes in the body of his complaint. There are other references in the complaint, and in the attachments to the complaint, indicating that the case number is 2022-000951-AH. The Wayne County Circuit Court does not have a case docketed under either number. Moreover, there are apparently no habeas cases filed under Plaintiff's name in that court.

There was a case pending in the Macomb County Circuit Court, as mentioned by Plaintiff. That case was transferred to the Michigan Court of Claims, where, at the time Plaintiff filed this case, it remained pending. There is no indication that Plaintiff identified either case as the reason for inmate-to-inmate correspondence in any request to Defendants. (Compl. Exhibits, ECF No. 1-1, PageID.21–36.) Similarly, there is a case pending in the United States District Court for the Eastern District of Michigan, however, the complaint had not been served on any defendant until, at the soonest, the end of August 2022. There is no indication that Plaintiff identified that case as the reason for inmate-to-inmate correspondence in any request to Defendants. (*Id.*)

On both cases that Plaintiff references from the Sixth Circuit Court of Appeals, Plaintiff is the only appellant and, of course, on appeal there is no need to communicate with witnesses. Additionally, there is no indication that Plaintiff identified the Sixth Circuit cases as the reason for inmate-to-inmate correspondence in any request to Defendants. (*Id.*)

4

With regard to this Court's Case No. 1:22-cv-149, no Defendant was served until after Plaintiff filed the instant complaint. Accordingly, that case could not provide a foundation for Plaintiff's inmate-to-inmate correspondence under the MDOC policy. With regard to this Court's Case No. 1:22-cv-634, no Defendant has been served; thus that case could not provide a foundation for Plaintiff's inmate-to-inmate correspondence under the MDOC policy. With regard to this Court's Case No. 1:19-cv-1018, Defendants were served before the relevant time frame, and it is certainly not impossible that Plaintiff might have sought to communicate with witnesses during the relevant time period. Nonetheless, there is no indication that Plaintiff identified this case as the reason for inmate-to-inmate correspondence in any request to Defendants. (*Id.*)

There was a case from this Court that Plaintiff referenced in his completed form requests to correspond inmate to inmate: Case No. 1:21-cv-1005. (*Id.*) In that habeas case, however, no party was ever served, there were no "co-plaintiffs," and Plaintiff's petition was transferred to the Sixth Circuit Court of Appeals—there was definitely no need for inmate witness testimony.

Finally, Plaintiff lists Case No. 2022-211770982-GC from the 60th District Court of Muskegon. That court does not have a case docketed under that number. That Court does not have any case docketed under a case number that is close to that number. That Court does not have any case with Plaintiff as a party that was pending during the relevant time period. Moreover, there is no indication that Plaintiff identified this case as the reason for inmate-to-inmate correspondence in any request to Defendants. (*Id.*)

Notwithstanding the specific requirements of the inmate-to-inmate correspondence DOM, Plaintiff contends he is entitled to correspond with his "witness" list. In each case that Plaintiff has recently commenced he promptly files a list of his proposed witnesses. Moreover, Plaintiff's complaint suggests that the MDOC official that reviews his request should check each of Plaintiff's

5

cases—not just the case or cases he includes on the request—to assess whether the inmate recipient might be a co-plaintiff or witness.

Plaintiff complains that the Defendants' failures to approve inmate-to-inmate correspondence have violated his First, Eighth, and Fourteenth Amendment rights. Plaintiff seeks damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

6

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment violations

#### 1.     Right to send mail

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). And, generally, "[a] prisoner has a First Amendment right to send mail." *Rodgers v. Hawley*, 14 F. App'x 403, 408 (6th Cir. 2001) (citing *Hudson v. Palmer*, 468 U.S. 517, 547 (1984)). But, like Plaintiff's other free speech rights, that right is "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).

The right to correspond **between inmates**, however, is inconsistent with legitimate penological objectives. Indeed, the seminal case of *Turner v. Safley*, 482 U.S. 78 (1987), balanced legitimate penological objectives against inmates' rights to correspond with each other. The *Turner* Court invited consideration of the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether

7

there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Id.,* at 89–90.

At issue in *Turner* was a Missouri Division of Correction regulation that prohibited inmate-to-inmate correspondence except between inmates who were immediate family members or inmates concerning legal matters. Based on those exceptions, the Missouri regulation was similar to the limitations set out in the MDOC inmate-to-inmate correspondence DOM. But also at issue in *Turner* was the application of that regulation at a particular facility—the Renz Correctional Center in Cedar City, Missouri—that was, essentially, a total inmate-to-inmate correspondence ban. *Id*. at 103 (partial concurrence of Justice Stevens) (stating "[a]fter a bench trial . . . the District Court found that there was a total ban on such correspondence at Renz . . ."). The *Turner* majority concluded that "the record clearly demonstrates that the regulation was reasonably related to legitimate security interests." *Id*. at 91. This Court has concluded that *Turner* upheld a total ban against inmate-to-inmate correspondence because it was reasonably related to legitimate penological interests. *See, e.g.*, *Sabin v. Karber*, No. 1:14-cv-296, 2017 WL 4160950, at *11 (W.D. Mich. Sept. 20, 2017); *Murphy v. Karber*, No. 1:14-cv-269, 2017 WL 4160949, at *13 (W.D. Mich. Sept. 20, 2017); *Mason v. McKeon*, No. 1:12-cv-1303, 2013 WL 829791, at *3 (W.D. Mich. Mar. 6, 2013); *Young v. Weathersby*, No. 1:09-cv-67, 2010 WL 3909463, at *8 (W.D. Mich. Sept. 15, 2010). Accordingly, the Court finds that Plaintiff has failed to state any claim for violation of his First Amendment right to send mail.

### 2. Access to the courts

Although Plaintiff's First Amendment claims fail at the outset because the rights he asserts are inconsistent with legitimate penological objectives, Plaintiff has failed to state a viable access to the courts claim for additional reasons.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

9

Plaintiff has failed to identify any non-frivolous litigation where he has lost a remedy because of the denial of his requests to participate in inmate-to-inmate correspondence. Accordingly, he has failed to state a claim for denial of access to the courts.

### 3. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff argues that Defendants denied him permission to correspond inmate-to-inmate after he grieved their prior denials of permission to correspond inmate-to-inmate. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). But the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. An "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996), "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all . . . ." *Id.* at 353 n.3.

Based on the specific requests to correspond inmate-to-inmate that Plaintiff identifies, his grievance was patently frivolous. He does not allege a specific instance where he was eligible to participate in inmate-to-inmate correspondence based on the DOM.

Moreover, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff sought permission to correspond inmate-to-inmate. There is nothing inherent in the denial of such a request that suggests that the denial would deter an ordinary person from seeking permission again.[2] Thus, Plaintiff has not adequately alleged adverse action.

---

[2] Indeed, if asking for permission is considered to be protected conduct and denying permission is deemed to be adverse action, then every denial would give rise to liability for First Amendment retaliation. That would be an absurd result. The Sixth Circuit has foreclosed that absurd result with regard to grievances generally. Filing a grievance is plainly protected conduct. If denying the grievance were considered adverse action, every denial would give rise to liability for First Amendment retaliation. But the Sixth Circuit clearly states that the denial of administrative grievances does not give rise to liability under § 1983. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does not constitute an adverse action for

In short, Plaintiff has failed to state a claim for First Amendment retaliation.

### B.     Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life 's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

No matter how liberally the Court construes the facts alleged by Plaintiff, the Court cannot discern any viable Eighth Amendment claim. Plaintiff has failed to state a claim for violation of his Eighth Amendment rights.

---

purposes of a retaliation claim). Denying a grievance could not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences.

12

### C. Fourteenth Amendment

The elements of a Fourteenth Amendment procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women 's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Plaintiff's claim does not suggest the Defendants actions have or will affect the duration of his sentence, and Plaintiff does not identify any atypical or significant hardship in relation to the ordinary incidents of prison life. Accordingly, the Court concludes that Plaintiff has failed to identify a protected liberty interest and, thus, has failed to state a claim for violation of his due process rights.

Prior to *Sandin*, the Supreme Court's decision in *Hewitt v. Helms*, 459 U.S. 460 (1983) provided the controlling law for determining whether a state statute granted prisoners a federally cognizable liberty interest. In *Hewitt*, a prisoner claimed that Pennsylvania law created a liberty interest in being housed in the general prison population, rather than in administrative segregation. *Hewitt*, 459 U.S. at 462. The Court held that the State created a protected liberty interest because the statute contained "explicitly mandatory language" that placed substantive limitations on the discretion of prison officials to place prisoners in segregation. *Id.* at 472. That appears to be the theory behind Plaintiff's due process claim: the MDOC, by virtue of mandatory language in the DOM, has created a protected interest.

In *Sandin*, the Supreme Court revisited the issue of how to determine whether a state statute grants prisoner's a liberty interest protected by the Due Process Clause. As the Supreme Court explained in *Wilkinson v. Austin*, 545 U.S. 209 (2005), "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id*. at 223. Plaintiff's attempt to conjure up a protected interest from the language of the DOM is misdirected.

### D.     Violation of the DOM

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated the DOM, therefore, fails to state a claim under § 1983.

Moreover, any claim that the Defendants violated the DOM is not supported by the facts Plaintiff has alleged. Based on the circumstances Plaintiff describes and the documents Plaintiff attaches to his complaint, the Defendants properly rejected Plaintiff's attempts to send inmate-to-inmate correspondence. Plaintiff's claims depend on an unsustainable reading of the DOM. Essentially he claims that anyone he deems a witness is a witness, anyone he calls a co-plaintiff is a co-plaintiff, and any time Plaintiff files a lawsuit, the minute he files a lawsuit, he is free to correspond with anyone he put on his contemporaneously filed witness list. The facts Plaintiff alleges do not support any claim that Defendants have violated the DOM.

### E. Conspiracy

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

For the reasons set forth above, Plaintiff has failed to state a conspiracy claim because he has failed to identify any unlawful action. But even if there were an unlawful action, his allegations regarding agreement fall short as well.

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe, at best, a series of supervisory relationships between the parties—or with regard to state court employee Mary Otto, no real connection at all to the other Defendants. The fact that those Defendants work in some relationship with each other does not evidence a conspiracy against Plaintiff. To the contrary, their interactions are easily explained as "collaborative acts done in pursuit of an employer's business." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994). They worked together. That does not suffice to show that "the parties 'agreed to the general conspiratorial objective of violating [Plaintiff's] constitutional rights.'" *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020). Plaintiff's allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Such parallel conduct may be consistent with an unlawful agreement, but it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff fails to state a plausible claim of conspiracy.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

    This is a dismissal as described by 28 U.S.C. § 1915(g).

    A judgment consistent with this opinion will be entered.


Dated:   February 17, 2023            /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge